UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>SIEMENS INDUSTRY SOFTWARE INC.,<br><br>    Defendant. | Case No. 20-cv-04151-WHO<br><br>**ORDER DENYING MOTION TO STAY; DENYING MOTION FOR LEAVE TO FILE SUR-REPLY; AND GRANTING IN PART AND DENYING IN PART MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 68, 69, 72, 80, 84, 85 |

## INTRODUCTION

This is a patent litigation case in which plaintiff Synopsys, Inc. ("Synopsys") accuses defendant Siemens Industry Software Inc.'s ("Siemens") Aprisa product of infringing four of Synopsys's patents. Siemens moves to stay the action under the Federal Arbitration Act ("FAA"), arguing that the most recent updated release of its Aprisa product is covered by a licensing agreement between the parties and that the parties have agreed to arbitrate any disputes relating to the scope of that license. But as Synopsys argues, the conditions precedent for arbitration set out in the licensing agreement have not yet been met and there is currently no ripe issue referable to arbitration. Siemens's motion to stay is DENIED WITHOUT PREJUDICE.[1] Siemens may move to stay this action again if and when the conditions precedent to arbitration have been satisfied. In addition, the parties' motions to seal are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

**I.   PATENT LICENSING & SETTLEMENT AGREEMENT BETWEEN SIEMENS & SYNOPSYS**

In June 2018 Synopsys, Siemens AG, the parent company of defendant Siemens, and

---

[1] Synopsys's motion for leave to file a sur-reply is DENIED.

Mentor Graphics, an indirect subsidiary of Siemens AG, entered into a Patent Licensing and Settlement Agreement ("PLSA") to resolve 22 separate actions between the corporate families. *See* Dkt. No. 68-9 ("PLSA") § 4.1, 5.1. The PLSA grants a license to "Siemens Subsidiaries" under "Synopsys Patents" to use "Siemens Licensed Products." *Id.* § 1.17, 1.23.

The PLSA includes the following dispute resolution process for any disputes arising out of the agreement:

> 10.4.1. If any dispute arises in connection with this Agreement, the responsible representatives of the parties shall attempt, in fair dealing and in good faith, to settle such dispute. Each party can request from the other party that on both sides a senior representative becomes involved in the negotiations. Each party is at any time entitled to terminate the settlement negotiations and to have recourse to an ADR proceeding set forth in Section 10.4.2 through written notification to the other party.
>
> 10.4.2. If the parties are not able to reach an amicable settlement pursuant to Section 10.4.1 they shall try to agree on an appropriate alternative dispute resolution (ADR) proceeding (for example mediation, conciliation, expert determination, dispute board, adjudication). If they do not reach agreement on the appropriate ADR proceeding within fourteen (14) days after failure of the settlement negotiations or if the dispute is not settled through ADR proceeding within a period of two (2) months after initiation of the ADR proceeding either party may initiate an arbitration proceeding pursuant to Section 10.4.3.
>
> 10.4.3 All disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be finally settled under the January 1, 1998 Rules of Arbitration of the International Chamber of Commerce by three (3) arbitrators, with each party nominating an arbitrator and the third arbitrator, who will act as chairman of the Arbitral Tribunal, nominated by the two (2) arbitrators. The seat of arbitration shall be New York, New York. The procedural law of this seat applicable to international arbitration proceedings shall apply where the Rules are silent. The language to be used in the arbitration proceedings shall be English.

*Id.* §§ 10.4.1, 10.4.2, 10.4.3.

## II. CURRENT LITIGATION

On June 23, 2020, Synopsys filed the present action against Avatar, alleging that Avatar's Aprisa product infringed several Synopsys patents. *See* Dkt. No. 1. Shortly after this action was filed, Siemens publicly announced that it had entered into an agreement to acquire Avatar. *See* Dkt. No. 4. On December 1, 2020, Avatar merged into Siemens and ceased to exist as a stand-alone entity. *See* Dkt. No. 51. The parties subsequently stipulated to substitute Siemens as defendant for Avatar. *See* Dkt. Nos. 58, 59.

On December 15, 2020, Siemens released a new version of its newly acquired Aprisa product, version 20.1.rel.1.0. *See* Dkt. No. 68-8 ("Mot."). On January 7, 2021, Siemens notified Synopsys of its position that the new 20.1.rel.1.0 release, and any future release, was covered by the parties' PLSA and therefore licensed as a Siemens Licensed Product under Synopsys's patents. In light of this position, Siemens requested that Synopsys:

> (1) file a joint stipulation that Synopsys's operative complaint does not include claims against Aprisa 20.1.rel.1.0, or subsequent versions, or (2) dismiss without prejudice its claims for ongoing infringement against Aprisa 20.1.rel.1.0., and subsequent versions, or (3) agree to stay the case with respect to such claims pending arbitration.

Dkt. No. 68-12 ("Pellikan Decl. Ex. 8") at 1. Siemens also requested that, to the extent Synopsys disputed the 20.1.rel.1.0 release was licensed under the PLSA, that Synopsys

> "agree to immediately become involved in settlement discussions concerning the parties' dispute relating to Synopsys's claims in Synopsys's Lawsuit about whether defendant's products (including Aprisa 20.1.rel.1.0 and any subsequent products) are licensed as 'Siemens Licensed Products' under Synopsys's patents, pursuant to Sections 1.15 and 3.1.3 of the Agreement."

Dkt. No. 68-11 ("Pellikan Decl., Ex. 7"). On January 21, 2021, Synopsys requested additional information about Aprisa 20.1.rel.1.0 so that Synopsys could assess and determine whether it fell within the scope of the PLSA. Dkt. No. 68-13 ("Pellikan Decl., Ex. 9") at 1. Since January 27, 2021, Synopsys has been working to review and assess the Aprisa source code.

Siemens filed a motion to stay this action, pending arbitration, on February 12, 2021. *See* Mot. Synopses filed an opposition to the motion on February 26, 2021, *see* Dkt. No. 72-4 ("Opp."), and Siemens filed a reply on March 5, 2021, *see* Dkt. No. 80-3 ("Reply"). On March 11, 2021, Synopsys moved for leave to file a sur-reply, arguing that a sur-reply was justified because Siemens raised new arguments and cases in its reply brief. *See* Dkt. No. 84-6 ("Sur-Reply").[2]

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), a party may move to stay an action brought

---

[2] Synopsys's motion for leave to file a sur-reply is DENIED. The new arguments and cases Siemens cites in its Reply are in direct response to the arguments raised in Synopsys's opposition. It is permissible for Siemens to address these issues in its Reply and Siemens's Reply arguments do not warrant Synopsys filing a Sur-Reply.

3

"upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Section 3 of the FAA states in full:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.* If a court determines that a case is "referable to arbitration" the FAA requires the court to stay the action upon a party's motion. *See Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 854 (9th Cir. 2011) (noting that the FAA "gives the adjudicating court no discretion as to whether to award relief").

In applying the FAA a court must assess "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether that agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In assessing agreements to arbitrate, courts apply "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sc. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).

## DISCUSSION

### I. MOTION TO STAY

Siemens moves to stay this action under § 3 of the FAA, arguing that there is an arbitrable dispute over whether the 20.1.rel.1.0 release of Aprisa is licensed under the PLSA. Mot. at 9. Synopsys responds that there is not yet any issue referable to arbitration because the parties have not completed the first two steps of the PLSA's three step grievance procedures. Opp. at 8-9. Although there is no dispute that the parties have not satisfied the conditions precedent to arbitrate under the PLSA, Siemens asserts that whether the first two steps of the grievance procedures have been satisfied is an issue to be decided in arbitration, not by this court. Reply at 3-5.

Many of the key issues relevant to this motion are not in dispute. The parties agree that the

4

PLSA contains a valid and enforceable arbitration provision. Mot. at 9; Opp. at 5-6. They also appear to agree that any dispute as to the scope of the license, and the extent to which it would cover the 20.1.rel.1.0 release of Aprisa and future versions, should be resolved through the PLSA's grievance procedures, which includes arbitration as its third and final step. Mot. at 9-10; Opp. at 6. The parties also appear to agree that the first two steps of the PLSA's grievance procedures are in progress but have not yet been completed. Mot. at 6, 10; Opp. at 8-9.

The primary question then, is whether I should, or must, stay this action under § 3 of the FAA where (1) the parties have agreed to arbitrate any dispute regarding the scope of the PLSA's license over the 20.1.rel.1.0 release of Aprisa once the first two steps of the PLSA's grievance procedures have been satisfied; and (2) the first two steps of the PLSA's grievance procedures have indisputably not been satisfied. Siemens argues that I must stay the action under these circumstances because whether the conditions precedent to arbitration under the PLSA have been met is a question for the arbitrator to decide, not this court. Reply at 3. Synopsys argues that where it is clear that conditions precedent to arbitration have not been met, a stay under the FAA is not appropriate. Opp. at 10.

I conclude that the parties have not triggered the PLSA's arbitration provision and that a stay under the FAA is premature. The Supreme Court has repeatedly held that *questions* as to whether the conditions precedent for arbitration are met should be resolved by an arbitrator. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) ("Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (summarizing *John Wiley* as holding "an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration"); *BG Group PLC v. Republic of Argentina*, 572 U.S. 25, 35 (2014) ("On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration."). The Ninth Circuit has followed this precedent, explaining that "'[P]rocedural' issues [ ] are presumptively not for the judge, but

for an arbitrator, to decide." *Skivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1065 (9th Cir. 2020). But these cases are not directly on point because there is no dispute over whether the conditions precedent to arbitration have been met – the parties agree that they have not been met. There is no "procedural issue" for either me or an arbitrator to decide.

Cases cited by Snyopsys from the First and Eleventh Circuits, and from one judge in this District, are more on point: They indicate that where it is clear the conditions precedent to an arbitration provision have not been met, the arbitration provision is not triggered, and the FAA's provisions do not apply. In *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1291 (11th Cir. 2002), the Eleventh Circuit held that a stay under the FAA was not appropriate where mediation was a condition precedent to arbitration under the parties' arbitration agreement but neither party had requested a mediation. As the court explained, "Because neither party requested mediation, the arbitration provision has not been activated and the FAA does not apply." *Id.* Similarly, in *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41 (1st Cir. 2003), the First Circuit held that the arbitration provision in the parties' contract was not triggered because neither had requested mediation. As the court held, "[w]here contracting parties condition an arbitration agreement upon the satisfaction of some condition precedent, the failure to satisfy the specified condition will preclude the parties from compelling arbitration and staying proceedings under the FAA." *Id.* The Hon. Vaughn Walker followed these precedents in *Mostowfi v. I2 Telecom Int'l, Inc.*, Case No. C 03-5784 VRW, 2004 WL 7338797, at *4 (N.D. Cal. May 27, 2004). In that case, Judge Walker declined to compel arbitration where the parties had failed to satisfy the mediation condition precedent to arbitration. *Id.* As he stated, "[b]ecause the parties in this case have included mediation as a condition precedent to arbitration, their failure to attempt to mediate the present dispute precludes the court from compelling arbitration of the claims." *Id.* As in these cases, I agree that here, where there is no dispute that the parties have not completed the PLSA's good faith negotiation and ADR grievance procedure steps, which are conditions precedent to arbitration, the arbitration provision is not triggered and a stay is not appropriate under the FAA.

Siemens makes several attempts to distinguish *Kemiron*, *HIM Portland*, and *Mostowfi*, none of which is convincing. First, Siemens argues that these cases do not control because they

1  fail to acknowledge *John Wiley*, *Howsam*, or *BG Group*. It notes that a Fourth Circuit case,
2  *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 565 n. 14 (4th
3  Cir. 2015), endorsed this argument, holding that *Kemiron* and *HIM Portland*, "do not control" on
4  this issue because they "predate, conflict with, or do not consider *Howsam* and *BG Group*."
5  However, as explained above, the *John Wiley*, *Howsam*, and *BG Group* cases all grapple with
6  whether a court or an arbitrator should resolve issues or disputes regarding whether conditions
7  precedent to an arbitration agreement have been met. It is not clear why these cases would apply
8  to the circumstance at issue in *Kemiron*, *HIM Portland*, or here, where there is no dispute that the
9  conditions precedent to arbitration have not been met. I disagree that these cases contradict the
10 holdings in *Kemiron*, *HIM Portland*, or *Mostowfi* or render them unpersuasive in these
11 circumstances.

12 Second, Siemens argues that these cases "fail to recognize that Sections 3 and 4 of the
13 FAA are 'parallel devices for enforcing an arbitration agreement" and that a defendant may seek
14 to stay a case pending arbitration without pursuing arbitration. Reply at 4. It is not clear to me
15 how this critique is relevant. While I agree that a stay is a valid remedy under the FAA, regardless
16 of whether a party is actively pursuing arbitration, this does not help resolve the question of
17 whether the arbitration provision in the PLSA has been triggered.

18 Third, Siemens argues that the three cases Synopsys cites are distinguishable because in
19 those cases the parties made no attempt to satisfy the conditions precedent to arbitration, but here
20 "Siemens is attempting to satisfy the PLSA's conditions for seeking arbitration." Reply at 5.
21 Siemens highlights that the parties are actively negotiating and have decided that mediation would
22 be appropriate if negotiations fail. *Id.* at 6. These facts do not create a meaningful distinction. In
23 making this argument Siemens admits that it has not yet satisfied "the conditions for seeking
24 arbitration" under the PLSA. *Id.* at 5. Where the conditions for seeking arbitration are clearly not
25 met, the arbitration provision is not triggered and the FAA's provisions do not apply. *See*
26 *Mostowfi v*, 2004 WL 7338797 at *4. While I am encouraged that the parties are complying with
27 their agreement to actively negotiate and attempt to resolve this issue pursuant to the grievance
28 procedures, their ongoing cooperation does not make a strong case for staying the case now under

7

the FAA.

Fourth, Siemens argues that denying its motion to stay would be contrary to the goals and purpose of the FAA, which is to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Reply at 6 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). It notes that the parties' three step grievance procedure is a "less adversarial and less expensive process for resolving disputes, reflecting of their intent to avoid litigation." Reply at 6. Siemens asserts that requiring it to satisfy the "agreed-to pre-arbitration dispute resolution procedures" before imposing a stay of this litigation frustrates the FAA, which is meant "to provide arbitration as an *alternative* to litigation for parties that so desire." Reply at 6. But it is the parties' own contractual terms and self-selected grievance procedures that pose a current bar to arbitration, not this court. The purpose of the FAA is not to move parties out of court generally, but to promote "unobstructed enforcement of arbitration agreements" pursuant to the terms and conditions the parties have selected. *Moses H. Cone*, 460 U.S. at 23. Because the parties' chosen grievance procedures involve two conditions precedent to arbitration, and because those conditions have not been satisfied, remedies under the FAA are not yet appropriate.

On these facts, I conclude that the arbitration provision in the parties' PLSA has not yet been triggered and that a stay under the FAA is therefore premature. When the preconditions have been satisfied, Siemens may renew this motion if Synopsys refuses to arbitrate.

## II.     MOTIONS TO SEAL

The parties move to seal a number of documents associated with their briefing on Siemens's motion to stay. *See* Dkt. Nos. 68, 72, 80, 84. Under Ninth Circuit law a party must demonstrate "compelling reasons" to seal any motion-related filings where "the motion at issue is more than tangentially related to the underlying cause of action." *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1096-99 (9th Cir. 2016). The parties' submissions regarding Siemens's motion to stay are subject to this "compelling reasons" standard because the motion relates to Siemens's affirmative defense that version 20.1.rel.1.0 and subsequent versions of Aprisa are licensed under the PLSA. What constitutes a compelling reason is "left to the sound discretion of

the trial court." *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S… 589, 598 (1978).  However, the Ninth Circuit has highlighted that "[e]xamples include when a court record might be used to gratify private spite or promote public scandal, to circulate libelous statements, or as sources of business information that might harm a litigant's competitive standing." *Ctr. for Auto Safety*, 809 F.3d at 1097.

Here, the information the parties seek to seal falls into two main categories: (1) information relating to the existence of and terms of the parties' PLSA; and (2) technical details regarding Aprisa release 20.1.rel.1.0.  As to the first category, courts have found compelling reasons to seal confidential contracts, contract negotiations, and trade secrets where their disclosure might harm a litigant's competitive standing. *Federal Trade Commission v. Qualcomm Inc.*, Case No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019).  The parties argue that the PLSA contains "commercially sensitive business information related confidential, financial information such as damage caps, bank account information, and negotiated compensation amounts" and should therefore be sealed in its entirety. *See* Dkt. No. 84 at 2.  They also note that the parties agreed that the PLSA, as well as information related to its negotiation, "shall not be disclosed or circulated to the trade or public, or any Third Party." *Id.*

I agree that portions of the PLSA appear commercially sensitive, but the parties' request to seal the entire PLSA, and any reference or acknowledgement of it, is not realistic.  It is not possible to coherently discuss Siemens's motion to stay without acknowledging the PLSA's existence and discussing the grievance procedures and arbitration provision the parties agreed to.

Further, disclosure of this information is not likely to cause competitive harm to the parties.  The parties themselves publicly acknowledge and reference the PLSA and some of its contents, including the parties to the agreement, in their motions to seal. *See e.g.* Dkt. No. 68 at 3; Dkt. No. 72 at 2.  In addition, Siemens's motion to stay pursuant to the FAA makes clear, at least implicitly, that there is an arbitration agreement between the parties.  Disclosure of the specific terms of that agreement and the parties' relatively generic grievance procedures are not likely to cause the parties competitive harm.

Accordingly, the parties' motions to seal are DENIED as to basic facts regarding the PLSA

9

1  including the existence and name of the agreement, the date of the agreement, and the parties to
2  the agreement.  The motions are also DENIED as to any references to or quotations from Section
3  10.4 of the PLSA, detailing the parties' dispute resolution procedures.  The motions are
4  GRANTED as to the remaining terms of the PLSA because the document reflects a confidential
5  contract between the parties, disclosure of which could cause competitive harm to the parties, and
6  because these terms are not material to resolution of the motion to stay.  Further details on how
7  this ruling impacts the specific documents filed under seal are provided in the chart below.

       Siemens also seeks to seal specific technical details regarding Aprisa release 20.1.rel.1.0 including release notes and source code that it argues contain confidential business and trade secret information regarding the Aprisa technology.  *See* Dkt. No. 68 at 4.  Siemens notes that it only provides release notes to customers who sign a confidentiality agreement and that disclosure of this information would expose the operation of "certain functionality within the Aprisa software and enable competitors to reverse engineer or otherwise utilize the confidential Aprisa functionality.  *Id.* at 4-5.  It further argues that Aprisa source code is kept confidential and is a trade secret  *Id.* at 5.  I agree that disclosure of these technical details regarding the Aprisa technology could cause competitive harm to Siemens and that there are compelling reasons to seal this information.  Further, this information is not key to understanding the issues raised by Siemens's motion to stay or my Order.  Accordingly, Siemens's motions to seal are GRANTED as to information related to the Aprisa release notes and source code.

       Full details regarding my rulings and how this impacts the sealing of specific documents are reflected in the below chart.  The parties will have 15 days from the date of this order to file any documents where I have indicated new redacted versions are required.  The clerk will unseal the indicated documents on the docket.

| Document | Sealed Portion | Sealing Justification | Designating Party | Ruling |
|---|---|---|---|---|
| Dkt. No. 68-8<br><br>Siemens's Motion to Stay Pending Arbitration | Redacted excerpts | Confidential contract terms and business information. | Siemens | DENIED as to information relating to (1) existence of PLSA; and (2) Section 10.4; GRANTED as to other terms of the agreement.<br><br>Siemens to refile a new redacted version of the motion to stay in line with this ruling. |
| Dkt. No. 68-9<br><br>Exhibit 3 to Mot. PLSA | All | Confidential contract terms and business information. | Siemens | DENIED as to information relating to (1) existence of PLSA; and (2) Section 10.4; GRANTED as to other terms of the agreement.<br><br>Siemens to refile a new redacted version of the PLSA in line with this ruling |
| Dkt. No. 68-10<br><br>Exhibit 6 to Mot. Aprisa Release Notes | All | Confidential release notes | Siemens | GRANTED |
| Dkt. No. 68-11<br><br>Exhibit 7 to Mot. Jan 7, 2021 Letter from Siemens Counsel to Synopsys Counsel | Redacted excerpts | Confidential contract terms and business information. | Siemens | DENIED as to information relating to (1) existence of PLSA; and (2) Section 10.4; GRANTED as to other terms of the agreement.<br><br>Siemens to refile a new redacted version of the letter in line with this ruling |
| Dkt. No. 68-12<br><br>Exhibit 8 to Mot. Jan 8, 2021 Letter from Siemens Outside Counsel to Synopsys Outside Counsel | Redacted excerpts | Confidential contract terms and business information. | Siemens | DENIED as to information relating to (1) existence of PLSA; and (2) Section 10.4; GRANTED as to other terms of the agreement.<br><br>Siemens to refile a new redacted version of the letter in line with this ruling |

11

| | | | | |
|---|---|---|---|---|
| Dkt. No. 68-13<br><br>Exhibit 9 to Mot. Jan 21, 2021 Letter from Synopsys Outside Counsel to Siemens Outside Counsel | Redacted excerpts | Confidential contract terms and business information. | Siemens | DENIED as to information relating to (1) existence of PLSA; and (2) Section 10.4; GRANTED as to other terms of the agreement.<br><br>Siemens to refile a new redacted version of the letter in line with this ruling |
| Dkt. No. 68-14<br><br>Exhibit 11 to Mot. Feb. 3, 2021 Letter from Siemens Outside Counsel to Synopsys Outside Counsel | Redacted excerpts | Confidential contract terms and business information; technical details regarding Aprisa. | Siemens | DENIED as to information relating to (1) existence of PLSA; and (2) Section 10.4; GRANTED as to other terms of the agreement and technical details regarding Aprisa.<br><br>Siemens to refile a new redacted version of the letter in line with this ruling |
| Dkt. No. 72-4<br><br>Synopsys's Opposition to Defendant's Motion to Stay Pending Arbitration | Redacted excerpts | Confidential contract terms and business information | Synopsys | DENIED as to information relating to (1) existence of PLSA; and (2) Section 10.4; GRANTED as to other terms of the agreement.<br><br>Synopsys to refile a new redacted version of its opposition in line with this ruling. |
| Dkt. No. 72-6<br><br>Pursley Decl. ISO Opp. | Redacted excerpts | Confidential contract terms and business information | Synopsys | DENIED as to information relating to (1) existence of PLSA; and (2) Section 10.4; GRANTED as to other terms of the agreement.<br><br>Synopsys to refile a new redacted version of the declaration in line with this ruling. |
| Dkt. No. 72-8<br><br>Pursley Decl. Ex. 1 | Redacted excerpts | Confidential contract terms and business information | Synopsys | DENIED as to information relating to (1) existence of PLSA; and (2) Section 10.4; GRANTED as to other terms of the agreement.<br><br>Synopsys to refile a new redacted |

| | | | | |
|---|---|---|---|---|
| | | | | version of the letter in line with this ruling. |
| Dkt. No. 72-10<br><br>Singh Decl. ISO Opp. | Redacted excerpts | Confidential contract terms and business information | Synopsys | GRANTED |
| Dkt. No. 72-12<br><br>Singh Decl. Ex. 1 | Redacted excerpts | Confidential contract terms and business information | Synopsys | GRANTED |
| Dkt. No. 80-3<br><br>Siemens's Reply ISO Motion to Stay | Redacted excerpts | Confidential contract terms and business information | Siemens | DENIED as to information relating to (1) existence of PLSA; and (2) Section 10.4; GRANTED as to other terms of the agreement.<br><br>Siemens to refile a new redacted version of the Reply in line with this ruling |
| Dkt. No. 84-4<br><br>Synopsys's Admin Motion to File Sur-Reply | Redacted excerpts | Confidential contract terms and business information | Synopsys | DENIED<br><br>Dkt. No. 84-4 to be unsealed on the docket. |
| Dkt. No. 84-6<br><br>Synopsys's Proposed Sur-Reply | Redacted excerpts | Confidential contract terms and business information | Synopsys | DENIED<br><br>Dkt. No. 84-6 to be unsealed on the docket. |

## CONCLUSION

For the reasons discussed above, Siemens's motion to stay this action pursuant to § 3 of the FAA is DENIED. Siemens may renew its motion to stay this action if the parties exhaust the other grievance procedures outlined in the PLSA and a dispute remains. Further, Synopsys's motion for leave to file a sur-reply is DENIED. The parties' motions to seal are DENIED IN PART and GRANTED IN PART as reflected in the above chart. The parties will have 15 days from the date

of this order to file any new redacted versions of the sealed documents where so ordered.

**IT IS SO ORDERED.**

Dated: April 2, 2021



William H. Orrick
United States District Judge

14